THE R. C. VEIT.

BARNEY DUMPING CO. v. THE R. C. VEIT.

(District Court, S. D. New York. May 8, 1893.)

1. TUGS AND TOWS—TOW GOING ADRIFT—INSECURE BITT OF TOW.
    Two mud scows belonging to libelant had dumped their loads at sea, when, on starting up, the bitt of the former scow, to which the second scow was attached, pulled out. There was a heavy sea at the time. It appeared that the scow whose bitt gave way was an old boat, and that such pulling out of a bitt was unprecedented. The evidence showed that the tug was managed with reasonable care. Held, that she was not liable.

2. SAME—ATTEMPT TO RESCUE DRIFTING SCOW—PROPER MANEUVERS.
    After the accident the tug maneuvered to pick up the drifting scow, but, the trailing hawser rendering the attempt dangerous, she first put into harbor with the remaining scow, and afterwards went out to the one adrift, but found her at anchor in shoal water. The tug then returned and reported, and other aid was obtained, but meantime the scow had gone ashore. Held, that the tug was not negligent.

In Admiralty. Libel by the Barney Dumping Company against the steam tug R. C. Veit for loss of a scow. Dismissed.

Stewart & Macklin, for libelant.
Carpenter & Mosher, for claimants.

BROWN, District Judge. The above libel was filed to recover for the loss of dumper No. 16, which, on the night of November 17, 1892, was taken in tow by the tug R. C. Veit to the dumping grounds outside of Sandy Hook, in order to dump her cargo of refuse. The dumper broke adrift and was afterwards lost. The libel charges negligence in handling the dumper and failure of proper care and endeavor to rescue her after she had broken away. She drifted and was lost on the beach at Rockaway.

There was a heavy sea at the time, and a strong wind from the northwest. No. 16 was attached to dumper No. 3 by a hawser from two to three hundred feet long, made fast to one of her stern bitts. No. 3 was on a hawser of about 100 fathoms from the Veit. On arriving at the dumping ground, the usual signal was given to the Veit, and the cargo was dumped as usual. After the cargo was out, No. 3 closed and came to properly; but No. 16 would not close, and her foreman on board sent a hail to the tug to swing No. 16 into the trough of the sea to assist her to close. The libel charges that this was done, and that afterwards the tug, in heading up again towards New York, maneuvered too suddenly and brought such a jerk upon the hawser that the bitt of No. 3, to which the hawser of No. 16 was attached, was pulled out.

There is no doubt that the bitt was pulled out of No. 3. The hawser did not break. The version given by the Veit of the preceding maneuvers differs to some extent from that given by the witnesses for the libelant. Without referring in detail to these differences, I am satisfied that the Veit was managed with reasonable care and prudence. It is not an uncommon thing for hawsers to be parted by these dumpers in such a sea as there was on the night in question. No previous instance is reported where the bitt was pulled out and the hawser did not break. No. 3 was an old boat. —the oldest, save one, among those in the service of the line. Some straining and jerking cannot be avoided in such seas. The mate on board for 10 or 15 minutes before the accident, and even before there was any swinging of the vessel, had been fearing that the hawser would part. I am satisfied that the accident arose from the age of the bitt and its insecurity, and not from any lack of reasonable care and prudence on the part of the tug.

Nor do I think any charges of fault are fairly established in not picking up the dumper after she got adrift. The Veit began to maneuver for that purpose, but found she was in shoal water. The dragging of the loose hawser from No. 16, as all the witnesses testify, made great care necessary in approaching her; for if the propeller should foul the hawser, all would be in great jeopardy. All the witnesses testify that the endeavor to pick up No. 16 at night with such a hawser dragging, would be difficult and dangerous with No. 3, also, in tow. On the whole I think the tug was justified in

ceasing this attempt and in going as she did to Gravesend bay, the nearest refuge, to leave No. 3, and then returning in the endeavor to find No. 16. She could not find the latter that night, though she cruised in search of her until 2 A. M.; but on the following morning found her at anchor in water where the Veit could not approach her. Her condition was thereupon reported as soon as possible, and other aid obtained. I do not think the Veit was negligent in either of these respects; and the libel must, therefore, be dismissed, with costs.